IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK08-83016-TJM |
| ) | A10-8052-TJM |
| TRI-STATE FINANCIAL, LLC, ) | |
| d/b/a North Country Ethanol, ) | CHAPTER 11 |
| ) | |
| Debtor. ) | |
| THOMAS D. STALNAKER, Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| GEORGE ALLISON, JR.; FRANK CERNIK; ) | |
| PHYLLIS CERNIK; CHRIS DANIEL; AMY ) | |
| DANIEL; DISTEFANO FAMILY LTD. ) | |
| PARTNERSHIP; MARK E. EHRHART; ) | |
| ROBERT G. GRIFFIN; JOHN L. HOICH; ) | |
| DENISE HOICH; TIMOTHY JACKES; ) | |
| JAMES G. JANDRAIN; AMERICAN ) | |
| INTERSTATE BANK; GEORGE ) | |
| KRAMER; BERNIE MARQUARDT; ) | |
| RADIO ENGINEERING INDUSTRIES, ) | |
| INC.; JOSEPH VACANTI, Trustee of the ) | |
| Joseph & Cynthia Vacanti Trust; and ) | |
| CENTRIS FEDERAL CREDIT UNION, ) | |
| ) | |
| Defendants. ) | |
| CENTRIS FEDERAL CREDIT UNION, ) | |
| ) | |
| Counterclaim and ) | |
| Cross-Claim Plaintiff, ) | |
| vs. ) | |
| ) | |
| THOMAS D. STALNAKER, Trustee, ) | |
| ) | |
| Counterclaim Defendant, ) | |
| and ) | |
| ) | |
| GEORGE ALLISON, JR.; FRANK CERNIK; ) | |
| PHYLLIS CERNIK; CHRIS DANIEL; AMY ) | |
| DANIEL; DISTEFANO FAMILY LTD. ) | |
| PARTNERSHIP; MARK E. EHRHART; ) | |
| ROBERT G. GRIFFIN; JOHN L. HOICH; ) | |

```
DENISE HOICH; TIMOTHY JACKES;            )
JAMES G. JANDRAIN; LINDA L.              )
KLASSMEYER; GEORGE KRAMER;               )
BERNIE MARQUARDT; RADIO                  )
ENGINEERING INDUSTRIES, INC.; and        )
JOSEPH VACANTI, Trustee of the           )
Joseph & Cynthia Vacanti Trust,          )
                                         )
              Cross-Claim Defendants.    )
```

ORDER

Trial was held in Omaha, Nebraska on October 30 and 31, 2012, on the plaintiff/trustee's amended complaint (Fil. No. 133). John D. Stalnaker appeared on behalf of the plaintiff/trustee; David J. Skalka appeared on behalf of Centris Federal Credit Union; Charles Jan Headley appeared on behalf of James G. Jandrain, Distefano Family Ltd. Partnership, George Allison, Jr., Frank and Phyllis Cernik, Chris and Amy Daniel, Timothy Jackes, George Kramer, and Bernie Marquardt; Michael J. Whaley and James Waldron appeared on behalf of Radio Engineering Industries, Inc.; Frederick D. Stehlik appeared on behalf of John Hoich and Denise Hoich; and Mark J. LaPuzza appeared on behalf of American Interstate Bank.

I. Background

This case concerns the ownership of funds received by the trustee of the Tri-State Financial, LLC ("TSF"), bankruptcy estate in the amount of $1,190.000.00. Those funds were received by the trustee from the Chapter 7 trustee of the bankruptcy estate of Tri-State Ethanol Company, LLC ("TSE"), which was filed in the Bankruptcy Court for the District of South Dakota. The funds were received by the TSF trustee based upon a claim filed by TSF prior to the filing of its bankruptcy case.

The trustee takes the position that the funds belong to the bankruptcy estate. Defendant Centris agrees that the funds belong to the bankruptcy estate, but asserts that the funds represent collateral covered by the blanket security interest held by Centris and, therefore, should be paid to Centris. The other defendants, referred to as the "Omaha Group" suggest that the funds are not property of the bankruptcy estate because they were originally contributed to TSF in a trust relationship whereby TSF would disburse the funds for the benefit of TSE during a time in which TSE was not producing ethanol and was operating in Chapter 11 in the District of South Dakota. The funds were used to continue maintenance, repairs, and payroll of TSE until a Chapter 11 plan was confirmed.

II. Findings of Fact

TSE was formed to create and operate an ethanol plant in Rosholt, South Dakota. The company had a number of members from Omaha, Nebraska, South Dakota, and Minnesota. Because of problems with construction of the plant, TSE had production problems and, in May of 2003, it

filed a Chapter 11 bankruptcy in the Bankruptcy Court for the District of South Dakota.

Shortly after the Chapter 11 filing, 20 of the 23 members of TSE, the defendants called the Omaha Group, created TSF in June of 2003 as an entity that could accept contributions from the Omaha Group and provide funding to pay the expenses of TSE and to repair the construction deficiencies in the ethanol plant. The Omaha Group provided $2,000,000.00 to TSF and TSF provided funding to the Chapter 11 TSE debtor in the amount of $1,983,654.42.

When it was set up, TSF, although receiving contributions from the Omaha Group, did not issue shares or units in the limited liability company to the Omaha Group. It did obtain an employer identification number, which was necessary for it to be able to open a checking account at First National Bank of Omaha and deposit the funds received from the Omaha Group into that account.

The position of the trustee and Centris is totally based upon the written records of TSF in 2003 and 2004. Those records include a checking account and check registers at First National Bank of Omaha and accounting documents created on computer software of defendant James Jandrain, the main person in charge of obtaining the funds from the Omaha Group and disbursing the funds to TSE to keep it in some form of operation during the Chapter 11 case in the District of South Dakota. The records include a document entitled "general ledger," which purports to show that the individual contributions from the Omaha Group were treated as equity in TSF.

The trustee and Centris presented the testimony of a forensic accountant as an expert witness. He reviewed the checking account records, the "general ledger," an audit that was performed in 2005, and an application for an employer identification number, and opined on the lack of tax records for the years 2003 and 2004. He concluded that TSF, as a limited liability company, taxed as a partnership, was created in 2003; obtained its employer identification number in 2003; obtained contributions identified on the general ledger as equity contributions from the Omaha Group in 2003; transferred its funds to TSE and others in 2003 and 2004; sought out and obtained funds from other investors in 2005; purchased TSE out of the South Dakota bankruptcy; and operated TSE as a going business until this bankruptcy was filed in 2008. He concluded, based upon his review of such records, that according to the tax laws and regulations of the United States and various accounting standards, the contributions from the Omaha Group should be characterized as investments in TSF representing equity in that entity.

Based on the records reviewed by the expert witness and his opinion, plus the fact that TSF filed the claim and request for allowance of the administrative expense in the South Dakota bankruptcy in its own name and not as agent for the Omaha Group, the trustee and Centris argue that the funds received from the South Dakota trustee are property of the estate in this bankruptcy.

Mr. Jandrain and his employees, Penny Thelen and Amy McFarland, and Scott Hayes, a representative of defendant Radio Engineering Industries, Inc. ("REI"), all testified as to the intent of the Omaha Group when TSF was set up. It is their testimony, uncontroverted by any testimony of any other witness, that the funds were contributed to TSF for the sole purpose of allowing TSF to serve as a conduit for monies to be loaned by the Omaha Group to TSE.

The witnesses further explained that although no formal loan agreements or promissory notes were executed by TSF or the Omaha Group, there was a record kept of the amount each member loaned. That record initially was kept on the documents identified as a "general ledger," which was the only accounting software available at Mr. Jandrain's office at the time. Neither the Omaha Group nor Mr. Jandrain and his employees intended the "general ledger" to be a record of equity contributions to TSF.

In July 2004, TSE's Chapter 11 bankruptcy case was converted to a Chapter 7 bankruptcy. John S. Lovald was appointed trustee. TSF then filed a request for payment of administrative expense and a proof of claim in the TSE bankruptcy seeking recovery of the $1,983,654.42. Trustee Lovald opposed the request and objected to the proof of claim.

After litigation, the bankruptcy judge allowed $793,654.42 as an administrative claim with first priority and $1,190,000.00 as a general unsecured claim subordinated to all other unsecured claims.

In 2005, Mr. Lovald auctioned the TSE plant. At that time, to enable TSF to purchase the plant, TSF obtained capital contributions from a number of parties, including the Omaha Group, but also including non-Omaha Group individuals and entities. TSF purchased the plant and began operation in February 2005. Based upon the capital contributions in 2005, TSF issued units to those contributing capital.

After the plant was operating profitably, the members of the board of TSF decided to make an interest payment to the Omaha Group because had it not been for them, the plant would have been liquidated for scrap in the TSE bankruptcy back in 2003 (Fil. No.196). The unit holders who were not members of the Omaha Group did not receive any of the interest payment.

In April 2005, after TSF had purchased the ethanol plant and was operating it relatively successfully, at a meeting of the Omaha Group and others, the $2,000,000.00 that the Omaha Group had loaned was discussed (Fil. No. 190). All of the members present were informed that the money provided by the Omaha Group had been intended to be treated as equity if the TSE Chapter 11 plan had been confirmed. However, when it was not confirmed, the money remained as a loan from the Omaha Group to TSE.

In July 2006, TSF received the $793,654.42 and immediately distributed all of it to the Omaha Group (Fil. No. 195). The trustee did not, at that time, distribute the $1,190,000.00 to TSF.

When the Chapter 7 trustee in South Dakota delivered the $793,654.42 to TSF, and TSF then distributed those funds on a pro-rata basis to the Omaha Group, TSF did not list any of that distribution on Internal Revenue Service Schedule K-1s, nor did it distribute any of those funds to members of the limited liability company who were not part of the Omaha Group.

In April 2006, Mr. Jandrain sent a memo to all investors explaining the ownership structure. He made it clear that the Omaha Group's contribution of $2,000,000.00 in 2003 and 2004 was a loan to the South Dakota plant and separate from any capital investment (Fil. No. 267).

In June 2006, TSF entered into a loan agreement with Centris and borrowed approximately $18,000,000.00. At that time, and in contemplation of the loan transaction, the equity interest of defendant REI was purchased by TSF (Fil. No. 197). The agreement provided that all of REI's equity in TSF was being purchased by TSF, but that REI retained its rights to its share of any funds received from the TSE trustee on the administrative claim or the proof of claim. When the original payment was received from the TSE trustee, REI did receive its proportionate share representing a return of a portion of the funds originally contributed by REI to TSF to fund the Chapter 11 case of TSE. A copy of the purchase agreement with the retained interest is held in the TSF loan file at Centris.

Similarly, defendant John Hoich sold his equity interest to Mr. Jandrain and other unit holders. His purchase agreement also contained a reservation of rights concerning the distribution of funds from the TSE Chapter 7 case (Fil. No. 233). He received his proportionate share of the original distribution.

TSF filed its voluntary Chapter 11 case in November 2008, prior to the time Mr. Lovald paid out the $1,190,000.00. The schedules filed by TSF do not indicate any money owed to TSF by the South Dakota trustee. By the time of that payment, Mr. Stalnaker had been appointed Chapter 11 trustee in TSF.

Some members of the Omaha Group filed claims in the TSF case. None of those claims refer to the right to a proportionate share of the money from the TSE estate, because none of them thought the TSE payment would be an asset of the TSF estate.

The funds held by the trustee in the original amount of $1,190,000.00 received from the trustee of the Chapter 7 bankruptcy estate of TSE are not property of the bankruptcy estate of TSF. Instead, they are the property of the listed defendants, other than Centris Federal Credit Union. The security interest held by Centris in the collateral of TSF does not extend to the funds held by the trustee because, as stated above, those funds are not property of the bankruptcy estate and the claim giving rise to the creation of the funds, although filed in the name of TSF, was not property of the pre-bankruptcy TSF. TSF was originally simply a pass-through entity allowing the Omaha Group to loan money to keep the TSE plant in existence during the Chapter 11 case in South Dakota. The original contributions were not equity in TSF

The factual finding of an ownership interest in the funds in favor of the defendants other than Centris is based upon the credible evidence presented by the Omaha Group concerning the creation of TSF, including the purpose of its creation; the intent of the members of the Omaha Group when the original monies were provided to TSF from the Omaha Group; the manner in which the money was distributed to TSE; the records concerning the individual contributions of each member of the Omaha Group; the minutes of the meetings of both the Omaha Group and the "investors" in TSF; the correspondence from Mr. Jandrain to the Omaha Group and the investors; the fact that the original

distribution from the Chapter 7 trustee in the TSE bankruptcy case in the amount of $793,654.42 was distributed to each member of the Omaha Group as a return of loaned funds, with no objection by any investor that was not a member of the Omaha Group; and by the testimony of the individuals who created and operated TSF both before it, as an entity, purchased TSE and after it did so.

### III. Conclusions of Law

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. 11 U.S.C. § 541(d).

The party claiming that the funds are held in trust and therefore are not property of the estate bears the burden of proof to establish the existence of a trust by evidence which is clear, satisfactory, and convincing in character. Peterson v. Redpath (In re Estate of Redpath), 402 N.W.2d 648, 650 (Neb. 1987).

As noted in the previous section, the evidence is clear that TSF was intended to serve a limited purpose, functioning merely as a conduit for the $2 million raised for the purpose of supplying operating funds for TSE. TSF did not own the funds contributed by the Omaha Group; it simply held them in a trust capacity. Under Nebraska law, "[w]here a transfer of property is made to one person and the whole or a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made." Wait v. Cornette, 612 N.W.2d 905, 910 (Neb. 2000). The rationale for this rule is that individuals seldom give consideration to receive nothing. Superior Hybrids Co. v. Carmichael, 333 N.W.2d 911, 913-14 (Neb. 1983) (citing Campbell v. Kirby, 239 N.W.2d 792 (1976))."A resulting trust is one raised by implication of law and presumed always to have been contemplated by the parties; the intention of the resulting trust is to be found in the nature of their transaction, but not expressed in deed or instrument of conveyance." Wait, 612 N.W.2d at 910. It is long-standing law in Nebraska that "a trust in personal property may be created by parol." Simon v. Simon, 5 N.W.2d 140, 142 (Neb. 1942). The resulting trust "attaches to a legal estate acquired by the consent of the parties, not in violation of any fiduciary duty or trust relation." Newman v. Liebig, 810 N.W.2d 408, 414 (Neb. 2011). Alternatively, the transactions created a constructive trust, which is "a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment." Wait, 612 N.W.2d at 911.

Because the bankruptcy estate succeeds only to such rights and title held by the debtor at the time the petition was filed, where the debtor holds only bare legal title to property, the beneficiary or true owner of the trust property holds an interest superior to the interest of the debtor or the trustee in bankruptcy. N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re N.S. Garrott & Sons), 772 F.2d 462, 467 (8th Cir. 1985). Accordingly, the defendants other than Centris prevail in this matter, and judgment to that effect will be entered after the trustee's compensation is determined.

IV. Compensation to TSF Estate

Although the funds are not property of the bankruptcy estate of TSF, the bankruptcy estate does have the right to reimbursement of its legal fees and expenses incurred in litigating and eventually settling with the Chapter 7 trustee in the TSE bankruptcy case then pending in the District of South Dakota. In addition, the estate, which had a legitimate basis for asserting the ownership of the funds, has a right to be compensated for its attorney fees, costs, and expenses incurred in this litigation. The trustee may submit a detailed statement of such fees and expenses, divided into categories such as expenses and fees incurred in the TSE matter and fees and expenses incurred in litigating the ownership of the funds in this pending bankruptcy case. After notice and the opportunity for objection, a hearing will be held if an objection is filed. This Order shall not be considered a final order until a ruling is made on the trustee's compensation application.

IT IS ORDERED that the funds in question are the property of the defendants other than Centris and such funds are not property of the bankruptcy estate.

DATED: February 13, 2013

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *John D. Stalnaker
    C. Jan Headley
    Michael J. Whaley
    James Waldron
    David J. Skalka
    Mark J. LaPuzza
    Frederick D. Stehlik
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.